Peter Kristofer Strojnik, State Bar No. 242728
**THE STROJNIK FIRM LLC**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 510-9409
Facsimile:   (602) 865-7788
strojnik@skplaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: |
| Plaintiff, | |
| | **VERIFIED COMPLAINT** |
| vs. | |
| The Meritage Resort, LLC, a California Limited Liability Company *dba* The Meritage Resort and Spa, | (Jury Trial Demanded) |
| Defendant. | |

Plaintiff alleges:

## PARTIES

1.      Plaintiff Theresa Brooke is a married woman currently residing in Pinal County, Arizona. Plaintiff is and, at all times relevant hereto, has been legally disabled, confined to a wheel chair, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the California Unruh Civil Rights Act, California Civil Code § 51,

1  52, and the California Disabled Persons Act. Plaintiff ambulates with the aid of a

2  wheelchair due to the loss of a leg.

3      2.   Defendant, The Meritage Resort, LLC, owns and/or operates and does

4  business as the hotel The Meritage Resort and Spa located at 875 Bordeaux Way, Napa,

5  California 94558. The Meritage Resort and Spa is a public accommodation pursuant to

6  42 U.S.C. § 12181(7)(A), which offers public lodging services.

7  **INTRODUCTION**

8      3.   Plaintiff Theresa Brooke brings this action against Defendant, alleging

9  violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et

10  seq., (the "ADA") and its implementing regulations, the California Unruh Civil Rights

11  Act ("Unruh"), California Civil Code §§51, 52, and the California Disabled Persons Act

12  ("DPA"), California Civil Code §§54-54.3.

13      4.   Plaintiff is a disabled woman confined to a wheelchair. She brings this

14  civil rights action against Defendant for failing to design, construct, and/or own or

15  operate hotel facilities that are fully accessible to, and independently usable by, disabled

16  people. Specifically, Defendant's hotel, which is a place of public accommodation, has

17  barriers to use of the swimming pool. Defendant's swimming pool does not have

18  acceptable means of entry for disabled persons, notwithstanding that such modifications

19  are readily achievable. Therefore, Plaintiff seeks a declaration that Defendant's hotel

20  violates federal law and an injunction requiring Defendant to install means of access in

21  compliance with ADA requirements so that the swimming pool is fully accessible to,

22  and independent usable by, disabled individuals. Plaintiff further requests that, given

23  Defendant's historical failure to comply with the ADA's mandate, the Court retain

24  jurisdiction of this matter for a period to be determined to ensure that Defendant comes

25  into compliance with the relevant requirements of the ADA, and to ensure that

26  Defendant has adopted and is following an institutional policy that will, in fact, cause

27  Defendant to remain in compliance with the law.

28

5.     In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter Kristofer Strojnik, her attorney, 2415 East Camelback, Suite 700, Phoenix, Arizona 85016.

## JURISDICTION AND VENUE

6.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188. The Court has supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367.

7.     Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

8.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

9.     On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

10.     The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

11.     Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

12.     On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

13.     Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

14.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

15.     In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

16.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

17.     On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

18.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

19.     The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[1]

20.     Notably, the lodging industry requested and received a number of extensions of time before the mandatory requirements of Section 242.2 of the 2010 Standards, concerning access to pools, became effective. Notwithstanding, the industry remains largely noncompliant with the requirements.

---

[1] Though the Effective Date of the 2010 Standards was March 15, 2011, the deadline for existing pools to comply did not become effective until January 31, 2013, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

## THE CALIFORNIA UNRUH CIVIL RIGHTS ACT *and*
## THE CALIFORNIA DISABLED PERSONS ACT

21.     Unruh and the DPA incorporate ADA standards, so a "violation of the ADA also constitutes a violation of both the Unruh Act and the DPA." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586, 81 Cal. Rptr. 3d 144 (2008); *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 731 (9th Cir. 2007).

22.     Unruh provides for injunctive relief, monetary damages in an amount not less than $4,000.00, and for the recovery of attorney's fees and costs.

23.     The DPA provides for monetary damages in an amount not less than $1,000.00 and for the recovery of attorney's fees and costs.

## ALLEGATIONS COMMON TO ALL COUNTS

24.     Pursuant to CFR 36-302(1)(ii), on or about January 14, 2016, Plaintiff contacted Defendant's hotel for purposes of booking a room. Plaintiff inquired whether Defendant's hotel pool or Jacuzzi ("pool") had a pool lift or other means of access for disabled persons such as Plaintiff. Defendant's representative stated that both the hotel swimming pool and Jacuzzi did not have a pool  lift or other means of access. Accordingly, Plaintiff had actual notice or actual knowledge of the barriers.

25.     Plaintiff's agent, an expert in ADA accessibility guidelines, as part of due diligence investigation, independently verified that the swimming pool did <u>not</u> have a pool lift. Plaintiff's agent reported the lack of accessibility to Plaintiff and provided Plaintiff with photographs demonstrating the lack of accessibility, and therefore Plaintiff had actual notice or actual knowledge of the barriers. But for these barriers, Plaintiff would lodge with Defendant in the near future.

26.     Plaintiff has personal knowledge of at least two barriers related to her disability, that is, swimming pool is inaccessible to her by virtue of her confinement to a wheel chair, and is currently deterred from visiting Defendant's accommodation by this accessibility barrier. Therefore, she has suffered an injury-in-fact for the purpose of her standing to bring this action.

27.    Other potential violations and barriers to entry may be discovered through the discovery process, which, if discovered, Plaintiff shall seek to allege further ADA, Unruh and DPA violations. *See Doran v. 7-Eleven*, 524 F.3d 1034 9th Cir. 2008) (plaintiff need only allege one instance of ADA violation to achieve standing, but is permitted to then challenge other ADA violations found in the course of discovery).

28.    Without the presence of a fixed pool lift or other means of permitting Plaintiff equal access to the swimming pool, Plaintiff's disability prevents her from equal enjoyment of the swimming pool.

29.    Plaintiff intends to travel to the location of the Defendant's place of public accommodation in the future for business, pleasure or medical treatment.

30.    As a result of Defendant's non-compliance with the ADA, Plaintiff will avoid and not stay at the Defendant's place of accommodation in the future.

31.    The existence of barriers to use the swimming pool at Defendant's hotel deterred Plaintiff from staying or returning to seek accommodations at Defendant's hotel. Upon information and belief, other disabled persons were deterred from staying there or otherwise precluded from using the pool as guests due to the absence of a pool lift.

32.    As a result of Defendant's non-compliance with the ADA, Plaintiff, unlike persons without disabilities, cannot independently use Defendant's swimming pool.

33.    In violation of Section 242.2 of the 2010 ADA Standards, Defendant's swimming pool does not have at least one accessible means of entry in complying with Sections 1009.2 or 1009.3.

34.    Plaintiff wishes to travel to the location of Defendant's place of public accommodation for personal, business and/or medical treatment and wants to stay in hotels there. But for the presence of architectural barriers at Defendant's hotel, Plaintiff would consider staying at the Defendant's hotel.

35.     Upon information and belief, though Defendant has centralized policies regarding the management and operating of its hotel, Defendant does not have a plan or policy that is reasonably calculated to make its entire hotel fully accessible to and independently usable by, disabled people.

36.     Plaintiff verified that Defendant's hotel lacks the mandatory elements required by the 2010 Standards to make pools fully accessible to and independently usable by disabled people.

37.     As a disabled person, Plaintiff has a keen interest in whether public accommodations that offer public lodging services are fully accessible to, and independently usable by, the disabled, specifically including an interest in ensuring that pools and spas possess all of the features required by the 2010 Standards.

38.     Plaintiff, or an agent of Plaintiff, intends to return to Defendant's hotel to ascertain whether it remains in violation of the ADA.

39.     Plaintiff and other disabled persons have been injured by Defendant's discriminatory practices and failure to remove architectural barriers. These injuries include being deterred from using Defendant's facilities due to the inaccessibility of Defendant's pool and the denial of the opportunity to use said pool.

40.     Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel pool in violation of her rights under the ADA.

**FIRST CAUSE OF ACTION**
**(Violation of Title III the Americans with Disabilities Act)**

41.     Plaintiff incorporates all allegations heretofore set forth.

42.     Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and Section 242.2 of the 2010 Standards, as described above.

43.     Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and

7

independently usable by individuals who are disabled in violation of 42 U.S.C. §12182(b)(A)(iv) and Section 242.2 of the 2010 Standards, as described above. Compliance with the requirements of section 242.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

44.    In violation of Section 242.2 of the 2010 Standards, Defendant's swimming pool does not have at least one accessible means of entry complying with Sections 1009.2 or 1009.3.

45.    Pursuant to Section 44 of the IRS Code, Defendant may be able to obtain a tax credit and tax deduction where it complies with the ADA. *See generally* Dep't of Justice, *Questions and Answers: Accessibility Requirements for Existing Swimming Pools at Hotels and Other Public Accommodations* (Mar. 1, 2013)[2]. The tax credit is available to businesses that have total revenues of $1,000.000 or less in the previous tax year or 30 or fewer full-time employees. This credit can cover 50% of the eligible access expenditures in a year up to $10,250 (maximum credit of $5,000).The tax credit can be used to offset the cost of undertaking barrier removal and alterations to improve accessibility. The tax deduction can be claimed for expenses incurred in barrier removal and alterations. *Id*.

46.    Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and Section 242.2 of the 2010 Standards, as described above, is readily achievable by the Defendant due to the low costs of installing a fixed pool lift or lifts. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

47.    Conversely, the cessation of compliance with the ADA law is also readily achievable by the removal of a fixed lift. Therefore, injunctive relief should issue

---

[2] http://www.ada.gov/qa_existingpools titleiii.htm

8

irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[3].

48.  Defendant's conduct is ongoing, and, given that Defendant has never complied with the ADA's requirements that public accommodations make lodging services fully accessible to, and independently usable by, disabled individuals, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

49.  Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its pool be fully accessible to, and independently useable by, disabled people is likely to recur.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to

---

[3]  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

1  ensure that all of its pools were fully accessible to, and independently

2  usable by, disabled individuals;

3  b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if

4  applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2)

5  and 28 CFR § 36.504(a) which directs Defendant to take all steps

6  necessary to bring its pools into full compliance with the requirements set

7  forth in the ADA, and its implementing regulations, so that the pools are

8  fully accessible to, and independently usable by, disabled individuals,

9  specifically including a pool lift as required by Sections 242.2 and 1009.2

10  of the 2010 Standards, and which further directs that the Court shall retain

11  jurisdiction for a period to be determined after Defendant certifies that its

12  pool is fully in compliance with the relevant requirements of the ADA to

13  ensure that Defendant has adopted and is following an institutional policy

14  that will in fact cause Defendant to remain fully in compliance with the

15  law;

16  c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if

17  applicable, payment of costs of suit;

18  d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if

19  applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28

20  CFR § 36.505 and other principles of law and equity and in compliance

21  with the "prevailing party" and "material alteration" of the parties'

22  relationship doctrines[4] in an amount no less than $3,500.00; and,

23  e. Order closure of the Defendant's place of public accommodation until

24  Defendant has fully complied with the ADA; and

25

26

27

28

---

[4] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

f.  The provision of whatever other relief the Court deems just, equitable and appropriate.

**SECOND CAUSE OF ACTION**
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

50.  Plaintiff realleges all allegations heretofore set forth.

51.  Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

52.  Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

53.  Plaintiff has been damaged by the Defendant's non-compliance with Unruh.

54.  Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00.

55.  Pursuant to Unruh, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies

11

that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c.   Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

d.   Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

e.   Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

f.   For damages in an amount no less than $4,000.00; and

g.   The provision of whatever other relief the Court deems just, equitable and appropriate.

### THIRD CAUSE OF ACTION
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

56.    Plaintiff realleges all allegations heretofore set forth.

57.    Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

58.    The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

59.    Plaintiff has been damaged by the Defendant's non-compliance with the DPA.

60.    Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

61.    Pursuant to the DPA, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

e. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

f. For damages in an amount no less than $1,000.00; and

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

1    RESPECTFULLY SUBMITTED this 25th day of January, 2016.

2                                                    **THE STROJNIK FIRM L.L.C.**

3

4

5                                                    /s/ Peter Kristofer Strojnik
                                                     Peter Kristofer Strojnik (242728)
6                                                    2415 East Camelback Road, Suite 700
                                                     Phoenix, Arizona 85016
7                                                    Attorneys for Plaintiff

8

9                        **VERIFICATION COMPLIANT WITH R10-3-405**

10

      I declare under penalty of perjury that the foregoing is true and correct.
11

12    DATED this 25th day of January, 2016.

13    /s/ *Therese Brooke*

14    _____
      Electronic Signature Authorized
15    Theresa Brooke

16

17

18

19

20

21

22

23

24

25

26

27

28